UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MAURICE WILKINS,

    Plaintiff,

v.

LAUREL HARRY, *et al.*,

    Defendants.

CIVIL ACTION NO. 3:24-cv-02026

(SAPORITO, J.)

## MEMORANDUM

Plaintiff Maurice Wilkins, incarcerated at SCI-Huntingdon, has filed a complaint (Doc. 1) pursuant to 42 U.S.C. § 1983, alleging that five defendants violated his Eighth Amendment rights by denying him a medically necessary diet to accommodate his celiac disease. The Court will permit Wilkins to proceed against defendants Ms. Miller and Ms. Wilson, and separately order them to respond to Wilkins's request for preliminary injunctive relief.

I.   Background

The complaint alleges as follows: Wilkins has celiac disease and has required a gluten-free diet for many years. On May 20, 2024, defendant C. Pittsinger told him that his gluten-free diet would not be "renewed" by the dieticians, because he bought items from the commissary that

conflicted with his diet and refused to sign a DC-465-C form.

In general, the DC-465-C form requires inmates receiving a "therapeutic diet" to agree not to take more than the prescribed amount of food, give away the food, or receive food not prescribed by the diet, among other rules. *See* (Doc. 1-1 at 6). Wilkins was given a version of the form with "added stipulations," including that any purchase of commissary items outside of his diet "shows [he] does not want to be on a therapeutic diet," and that he would be presumed to have eaten that food. *See* (Doc. 1-1 at 7). Wilkins refused to sign, because he wanted to be able to purchase food for the purpose of selling or trading it. Wilkins alleges that other inmates on therapeutic diets "buy commissary not aligned with their diet," and are not "harassed" or denied their prescribed diet.

This was the latest incident in what Wilkins sees as a campaign by various DOC employees to "persuade" him to abandon his gluten-free diet, including "meals [contradicting] the diet," "excessive bean meals as a main protein," an "extreme light breakfast [regimen]," undercooked food, and a staff member allegedly making a reference to contaminating his trays. Wilkins also alleges that a general "refresh" of the menu

resulted in better diets being provided to the standard prison diet, at the expense of the gluten-free diet, which became worse.

Wilkins asserts Eighth Amendment claims, and First Amendment retaliation claims, against five defendants: Secretary of Corrections Laurel Harry, Craig Copper (the chief of the DOC's Food Services Division), Ms. Miller and Ms. Wilson (described as "State Dieticians" who oversee nutritional standards for the DOC), and Pittsinger, the Food Service Manager for SCI-Huntingdon. In addition to monetary relief, he seeks preliminary and permanent injunctive relief directing the defendants to restore his gluten-free diet and provide a more "efficient calorie intake" with the "same additions" as the regular menu.

## II. LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma*

*pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Wilkins seeks damages under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged

violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III. DISCUSSION

### A. Eighth Amendment Claims

In general, an Eighth Amendment violation exists when a prison official deprives an inmate of "the minimal civilized measure of life's necessities," and the official is deliberately indifferent to the inmate's health or safety. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Eighth Amendment requires that inmates receive a "nutritionally adequate diet," *Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008),

free of food that "present[s] an immediate danger to the health and well being of the inmates who consume it." *Nguien v. Pennsylvania Dep't of Corr.*, No. 3:18-CV-0209, 2023 WL 2527353, at *11 (W.D. Pa. Mar. 15, 2023) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). This can include the elimination of allergens or foods that are dangerous to a particular inmate. *See, e.g., Jackson v. Gordon*, 145 F. App'x 774, 776 (3d Cir. 2005) (failure to accommodate plaintiff's alleged lactose intolerance and allergy to eggs).

Wilkins alleges that he was denied his therapeutic diet because of his commissary purchases and his refusal to sign the DC-465-C form. It is both constitutional and consistent with DOC policy[1] for dieticians to consider an inmate's commissary purchases in determining whether that inmate needs a special diet. *See, e.g., Young v. Beard*, No. CIV.A. 06-160, 2008 WL 2693860, at *8 (W.D. Pa. Apr. 4, 2008), report and recommendation adopted as modified, 2008 WL 2693859 (W.D. Pa. June 30, 2008); *see also Contant v. Lowe*, 450 F. App'x 187, 189 (3d Cir. 2011)

---

[1] The Court takes judicial notice of DC-ADM 610, Food Services Procedures Manual, Section 2.D.7: "The Department Dietitian may utilize the Meal Management System as well as review commissary purchases to assess need for a therapeutic diet and make appropriate recommendations regarding nutrition interventions."

(religious diet discontinued based on commissary purchases).

At the same time, Wilkins remains entitled to a nutritionally adequate diet. Prison officials can appropriately restrict Wilkins's commissary use[2], but cannot knowingly deny him a nutritionally adequate diet for "a non-medical reason." *See Rouse v. Plantier*, 182 F.3d 192, 197-99 (3d Cir. 1999). Therefore, unauthorized commissary use may be evidence that an inmate does not need a certain diet but does not automatically justify revocation of a therapeutic diet. *See Nguien*, 2023 WL 2527353, at *6 (finding an issue of fact as to an inmate's dietary needs where the record was "unclear" if he had consumed his non-compliant commissary purchases).

Wilkins alleges that he has had celiac disease requiring a therapeutic diet for several years[3] and the dietician defendants were

---

[2] Wilkins has no constitutional right to purchase items from a commissary. *See Travillion v. Allegheny Cnty. Bureau of Corr.*, No. 2:07-CV-928, 2008 WL 2699988, at *2 (W.D. Pa. July 7, 2008) (collecting cases).

[3] Wilkins previously sued some of these defendants on claims that he was not provided a nutritionally adequate diet to accommodate his celiac disease. *See Wilkins v. Wolf*, No. 1:20-CV-02450 (M.D. Pa., filed Dec. 28, 2020). The alleged deprivation post-dates the resolution of that case, and no issue of *res judicata* is apparent from the complaint.

aware of those facts. His allegations support a plausible inference that the dieticians revoked that diet merely because he was purchasing non-compliant items from the commissary, without any genuine inquiry as to whether the diet was medically necessary. Therefore, Wilkins may proceed on claims against the dietician defendants based on their alleged decision to deny him a nutritionally adequate diet. Those defendants will also be ordered to file a separate response to Wilkins's request for preliminary injunctive relief, limited to the issue of whether Wilkins is being provided a nutritionally adequate diet. These claims may not proceed against any other defendant because Wilkins has not alleged any other defendant's personal involvement in this decision. *See Rode*, 845 F.2d at 1207.

### B. Retaliation Claims

Wilkins pursues retaliation claims against the defendants, ascribing the negative changes to his diet[4] to his "prior civil suit and high

---

[4] Many of the diet issues Wilkins ascribes to retaliation (such as the inferior menu and the excessive use of beans) pertain to the general gluten-free menu, and it is unclear how these broader changes would be motivated by a desire to target him personally. The Court's retaliation analysis is directed to his allegation that he was targeted for changes to his individual diet based on his prior litigation and grievances.

volumes of grievances" about his diet.

To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be established "from the evidence gleaned from the record as a whole." *Id.*

The first two elements are satisfied. Prison grievances are constitutionally protected conduct, *Watson*, 834 F.3d at 422, and the denial of nutritionally adequate food is an adverse action for purposes of a retaliation claim. *See Johnson v. Clark*, No. 23-CV-4738, 2024 WL 2331715, at *11 (E.D. Pa. May 22, 2024).

Regarding causation, Wilkins alleges that other inmates who buy non-compliant commissary items are not removed from their diets, which supports an inference of retaliation against him personally. The timing of the incident is potentially suggestive: Between February and April 2024, Wilkins made multiple grievances and complaints relating to his diet. *See* (Doc. 1-5 at 2-6, 8-9). He was then asked to sign the DC-465-C form on May 20, 2024, to maintain a therapeutic diet that he had already been medically qualified to receive. Making all reasonable inferences in Wilkins's favor, the complaint plausibly alleges that Wilkins's protected activity was a "substantial or motivating factor" in the dieticians' ultimate revocation of his therapeutic diet.

As with his Eighth Amendment claims, Wilkins has not shown any other defendant's personal involvement in that decision, so the claim will proceed only against the dieticians. Although Wilkins infers further retaliation from other dietary issues, including incidents of undercooked food and a remark about "contaminated" food, he has not pled facts indicating that any of the defendants were personally involved in these incidents, nor that these incidents were related to his prior litigation and grievances. Accordingly, his retaliation claims are limited to the

dieticians' revocation of his therapeutic diet.

## IV. CONCLUSION

Wilkins is granted leave to proceed on claims under the First and Eighth Amendments against the state dieticians, Ms. Miller and Ms. Wilson. In addition, those defendants will be ordered to respond separately to Wilkins's request for preliminary injunctive relief. An appropriate order follows.

Dated: December 12, 2024        *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                United States District Judge