## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MAURICE WILKINS,

       Plaintiff,

       v.

LAUREL HARRY, *et al.*,

       Defendants.

CIVIL ACTION NO. 3:24-cv-02026

(SAPORITO, J.)

### MEMORANDUM

Plaintiff Maurice Wilkins, incarcerated at SCI-Huntingdon, proceeds on First and Eighth Amendment claims against two dieticians from the Department of Corrections ("DOC") for denying him a medically necessary diet to accommodate his Celiac disease. Defendants move to dismiss the complaint in part. (Doc. 13). For the reasons described herein, the Court will deny defendants' motion and order them to file a further response to Wilkins's request for preliminary injunctive relief.

### I.   BACKGROUND

Wilkins alleges that he has celiac disease and has required a gluten-free and corn-free diet for many years. As described in his complaint and

attachments[1], he has been in ongoing disagreement with various DOC

employees regarding his diet. In 2022, in a previous case in this district,

Wilkins reached a settlement with a DOC dietician, Anne Brown, on an

Eighth Amendment claim for denial of a medically adequate diet. *See*

*Wilkins v. Wolf,* No. 1:20-cv-00540 (M. D. Pa.) (Docs. 66, 67, 72, 73). In

February 2024, he submitted a grievance alleging that a kitchen

supervisor, "Mrs. Beck," ordered an inmate working in the kitchen to

"pour corn juice" on Wilkins's food tray, and "fired" the inmate when he

refused to do so.   In March and April 2024, he complained to Craig

Copper, Chief of the DOC's Food Services Division. Wilkins wrote that

after a recent "refresh" of the prison menu, he repeatedly pointed out

meals on the new "diet menu" that conflicted with his diet. Although

some of these items were removed, "there were still some conflicts on the

menu." In addition, some foods within his diet were removed and replaced

with what he viewed as inferior substitutes. He claimed that Brown, the

---

[1] Wilkins provided additional allegations and evidence with his brief opposing the motion to dismiss. However, any new facts are not considered in evaluating the sufficiency of his complaint. *See Hughes v. United Parcel Serv., Inc.,* 639 F. App'x 99, 104 (3d Cir. 2016) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.").

dietician, was "using food as a punishment" for his complaints.

On May 20, 2024, Wilkins was told that his diet would not be "renewed" by the prison dieticians, because he bought items from the commissary that conflicted with his diet and refused to sign a DC-465-C form. The DC-465-C form requires inmates receiving a "therapeutic diet" to agree not to take more than the prescribed amount of food, give away the food, or receive food not prescribed by the diet, among other rules. In the version of the form presented to Wilkins, he was asked to stipulate that any purchase of commissary items outside of his diet "shows [he] does not want to be on a therapeutic diet," and that he would be presumed to have eaten that food. *See* (Doc. 1-1 at 7). Wilkins refused to sign, because he wanted to be able to buy food for the purpose of selling or trading it. Wilkins alleges that other inmates on therapeutic diets "buy commissary not aligned with their diet," and are not "harassed" or denied their prescribed diet.

The Court permitted Wilkins to proceed on First Amendment retaliation claims, and Eighth Amendment claims premised on denial of a nutritionally adequate diet, against two dieticians, Ms. Miller and Ms. Wilson. *See* (Doc. 8). Defendants now move to dismiss the retaliation

claims, arguing that Wilkins has not plausibly alleged that his complaints caused them to revoke his diet.

## II.   MOTION TO DISMISS

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

To state a prima facie case of First Amendment retaliation, a

plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be established "from the evidence gleaned from the record as a whole." *Id.*

Defendants concede that the first two elements are satisfied here, because non-frivolous grievances and lawsuits are protected conduct and the denial of a nutritionally adequate diet is an adverse action for purposes of a retaliation claim. However, they argue that Wilkins has not plausibly alleged causation, because the grievances in question were only "tangentially related to his medical diet" and Miller and Wilson lacked "motive" to retaliate against him because their names were not

- 5 -

mentioned in the prior complaints. *See* (Doc. 14 at 7-11).

The Court disagrees. Wilkins's complaints did directly concern the prison's observance of his medical diet. The complaint about "corn juice" was relevant because Wilkins allegedly has a corn allergy, and Wilkins directly questioned whether the diet was being enforced because the prison failed to "investigate" his allegations that Mrs. Beck had tried to add corn byproduct to his food. His letters to Copper[2] alleged that he was continually being served meals that conflicted with his diet even after he repeatedly "pointed out [the] conflict meals."

Although these complaints did not identify Miller or Wilson by name, Wilkins's allegations plausibly suggest that causation could be established "from the record as a whole." *Watson*, 834 F.3d at 424. Wilkins alleges that Miller and Wilson "are the State Dieticians and they oversee nutritional standards for [the DOC] and create diet menus."

---

[2] Defendants do not appear to dispute that the letters to Copper, and the underlying complaints described therein, are among the protected activity, even though they were not submitted through the grievance process. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 298-99 (3d Cir. 2016) ("In this context, form is secondary to content . . . Mack's oral grievance sufficiently and timely put prison officials on notice that he was seeking redress, was conveyed to prison officials in a reasonable manner, and concerned conduct that the prison itself prohibits.").

Although his written correspondence attached to the complaint identified Brown as "the dietician," his ongoing complaints about the menu, as he describes them, would have directly implicated Miller and Wilson.

Within two months[3] of his complaints to Copper, Wilkins was allegedly asked to sign a DC-465-C form to maintain a therapeutic diet that he had repeatedly been medically qualified to receive, while other inmates who bought non-compliant commissary items were not removed from their diets. He alleges that he has celiac disease, for which there is "no cure" and "the only treatment required is a lifelong gluten-free diet,"[4] which would undermine any medical justification for removing him from the diet. Making all reasonable inferences in Wilkins's favor, as required at the pleading stage, Wilkins plausibly alleges that his protected activity was a "substantial or motivating factor" in the dieticians' revocation of his therapeutic diet.

---

[3] Wilkins was advised of the decision to remove him from the diet on May 20, 2024, but the precise date he was asked to sign the form is unclear.

[4] *See* (Doc. 1-4 at 4, 11) (apparent excerpts from medical publications describing the symptoms and treatment of celiac disease).

### III.    MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Wilkins also requested preliminary injunctive relief, and the Court ordered defendants to respond separately to this request.[5] Preliminary injunctive relief is an "extraordinary remedy," for which the movant "must establish entitlement to relief by clear evidence." *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). On a request for preliminary injunctive relief, courts consider four factors: (1) whether there is a "reasonable probability" of success on the merits, (2) whether denial would cause irreparable harm to the plaintiff, (3) whether the relief would cause greater harm to the non-moving party, and (4) whether the relief would be in the public interest. *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102-03 (3d Cir. 2022). The first two factors are "prerequisites that the moving party must establish." *Id.* (citing *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020)). These two factors "are correlative: that is, the weaker the merits showing, the more will be

---

[5] Defendants argue that the request must be deemed withdrawn pursuant to Local Rule 7.5 because it was not accompanied by a brief in support. However, Local Rule 7.5 applies to "motions," and Wilkins's request was not filed as a motion. The document defendants refer to as Wilkins's "motion" was a proposed order. *See* (Doc. 5).

required on the showing of irreparable harm, and vice versa." *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 163 (M.D. Pa. 2020) (citations omitted). "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." *Wesley v. Sec'y Pennsylvania Dep't of Corr.*, 569 F. App'x 123, 125 (3d Cir. 2014) (emphasis in original) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)).

Defendants argue that "because [Wilkins] has failed to file a supporting brief, he has not produced the required, sufficient evidence to satisfy the essential elements of his underlying causes of action." However, the evidence attached to Wilkins's complaint indicates as follows:

- Celiac disease causes inflammation of the small intestine from the consumption of gluten, and "[p]eople with Celiac disease cannot tolerate gluten." There is no recognized cure, and treatment requires "a lifelong gluten-free diet." (Doc. 1-4 at 2, 11).

- Prison medical staff "confirmed" Wilkins's diagnosis of Celiac

disease in May 2020, and he was prescribed a "Gluten Free, No Corn diet." (Doc. 1-5 at 10).

- Wilkins's diet order was "renewed," in some form, as recently as April 12, 2024. *See* (Doc. 1-2 at 5).

- At some point before May 20, 2024, Wilkins was asked to sign a DC-465-C form, which required him to stipulate that any purchase of commissary items outside of his diet "shows [he] does not want to be on a therapeutic diet," and that he would be presumed to have eaten that food. *See* (Doc. 1-1 at 7).

- Wilkins told the medical staff he was not consuming any forbidden food, but he was buying food to exchange for additional diet-complaint food. (Doc. 1-2 at 2). However, the diet was "stopped . . . by the Dietician at Central Office" "when [Wilkins] refused to sign a DC-465-C." (Doc. 1-1 at 2); *see also* (Doc. 1-2 at 10) ("When inmates refuse to sign for the rules associated with their diet and continue to purchase items that contradict the special diet, they will be removed.").

- Defendants will not permit Wilkins to resume the diet unless he signs the DC-465-C form. (Doc. 1-2 at 5).

- The record lacks any evidence that Wilkins's medical condition has changed, or any evidence contradicting Wilkins's claim that he sold, but never consumed, the non-compliant food.

Defendants argue that Wilkins has not made the required showing of "immediate" irreparable harm. In grievances after the revocation of his diet, Wilkins indicated that he was not eating the food served to him because of the "future health risks of intestinal damage and GI cancers." (Doc. 1-2 at 2-3, 9; *see also* Doc. 1-1 at 2). Such risks of future harm would not themselves justify preliminary injunctive relief. But while defendants infer that Wilkins is not suffering any present harm, the record suggests that is at least in part because he is not eating the foods being served to him and is instead suffering "lack of nutrition." *See* (Doc. 1-1 at 2; Doc. 1-2 at 5); *see, e.g., Pineida v. Lee*, No. 12-CV-01171-JST, 2014 WL 4802745, at *3-4 (N.D. Cal. Sept. 25, 2014) (granting preliminary injunction to inmate with Celiac disease where the prison diet "require[d him] to choose between either eating foods that cause him pain [and/or] discomfort, or going hungry").

For these reasons, defendants will be ordered to file a supplemental

response. The response should address the following issues:

- If defendants contend that a prison inmate's medically necessary diet can be revoked for violation of commissary rules, or for failure to sign the DC-465-C form, defendants should provide legal authority supporting that position.

- Separately, if defendants contend that Wilkins does not medically require a therapeutic diet, the response should explain the basis for that position given the evidence described above.

- If defendants contend that Wilkins is not suffering immediate irreparable harm from his present diet due to his Celiac disease, the response should explain the basis for that position with reference to appropriate evidence and legal authority.

An appropriate order follows.

Dated: April 4, 2025

s/Joseph F. Saporito, Jr.
JOSEPH F. SAPORITO, JR.
United States District Judge